Patrick Mihelic and James Clyde Pate were killed and their bodies burned beyond recognition in a one-car accident in Northport, Alabama. The bodies were misidentified at some stage of the ensuing investigation, either by the Alabama State Troopers, the coroner, or a driver from the State Department of Forensic Sciences. The bodies were taken to Sunset Funeral Home, Inc. for preparation for burial. Subsequently, Mihelic was entombed in Pate's mausoleum and Pate was buried in Mihelic's underground plot.
There was evidence that Earl Mitchell, general manager of Sunset Funeral Home, was alerted to the possible misidentification of the bodies when he learned 30 minutes to two hours before the Pate funeral that the necklace removed from the body of the man thought to be Pate was claimed by the Mihelic family. Pate's mother, Mrs. Doris Hardy, was concerned about how the bodies had been identified after having been so badly burned. Several days after the funerals, Mrs. Hardy's continuing concern that the bodies may not have been correctly identified compelled her to have the body in the mausoleum disentombed and a jawbone removed for identification purposes. A comparison of the jawbone with dental records revealed that the body in the mausoleum was that of Mihelic rather than that of Pate. The bodies were then switched so that Pate was entombed in the mausoleum and Mihelic was buried in the underground plot.
Pate's parents, Mrs. Hardy and Mr. J.C. Pate, filed suit against Coroner J.B. Cunningham, Tuscaloosa County, Sunset Funeral Home, and Earl Mitchell. Mrs. Hardy claims that as a result of what happened she cannot eat certain foods, she does not sleep well, she has nightmares, and she had to give up her job in the health care field. While Mr. Pate joined in the complaint as a plaintiff, he did not testify at the trial or amend the complaint to particularize his injuries.
The trial judge granted a motion for directed verdict for Cunningham and Tuscaloosa County as to the plaintiffs' claims of outrage, bad faith, breach of contract, willful or wanton misconduct, and deceit and fraud. The trial judge also granted a motion for directed verdict for Mitchell and Sunset Funeral Home as to the plaintiffs' claims of outrage and willful and wanton misconduct. The jury considered the claim of negligence against Cunningham and Tuscaloosa County and the claims of negligence, breach of contract, and fraud and deceit against Mitchell and Sunset Funeral Home. The jury returned a verdict in favor of all of the defendants. The trial judge denied the plaintiffs' motion for a new trial.
The plaintiffs appeal, claiming that the trial court erred in granting the defendants' motions for directed verdicts on the issue of wanton misconduct and that the jury's verdict was contrary to the great weight of the evidence.
In Ritch v. Waldrop, 428 So.2d 1 at 2 (Ala. 1982), this Court recognized that the standard of review for a directed verdict is well-established:
 "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala. 1978). In considering a motion for directed verdict, the court must apply *Page 349 
Rule 50 (e), ARCP, under which `a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark . . . or a scintilla in support of the theory of the complaint. . . .' Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274
(Ala. 1975).
 "In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236
(1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977). Also, this Court's function in reviewing a motion for a directed verdict is to review the tendencies of the evidence most favorably to the non-movant, regardless of a view we may have as to the weight of the evidence, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Beloit Corp. v. Harrell, 339 So.2d 992
(Ala. 1976). Caterpillar Tractor Company v. Ford, 406 So.2d 854 at 856 (Ala. 1981)."
The plaintiffs argue that there was a scintilla of evidence to support their wantonness claims. According to the plaintiffs, the evidence showed that Cunningham never made any attempt to positively identify the bodies, as they say he is required to do in his position as coroner. The evidence also shows that Mitchell knew that the bodies were burned beyond recognition and that he knew that the necklace that was removed from what was thought to be Pate's body was later claimed by the Mihelics and that he had some doubts as to whether the bodies had been correctly identified; yet, Mitchell did not postpone the funeral and request that a positive identification be made. In summary, the plaintiffs argue that the evidence of Cunningham's conduct and Mitchell's conduct, when viewed in a light most favorable to the plaintiffs, could support their claims of wantonness and that these claims should have been submitted to the jury. We disagree.
What constitutes wanton misconduct depends upon the facts presented in each particular case. Westbrook v. Gibbs, 285 Ala. 223, 231 So.2d 97 (1970). In order for the trial court to find a party guilty of wanton conduct, it must be shown that with reckless indifference to the consequences the party consciously and intentionally did some wrongful act or omitted some known duty, and that this act or omission produced the injury.Roberts v. Brown, 384 So.2d 1047 (Ala. 1980); Britton v.Doehring, 286 Ala. 498, 242 So.2d 666 (1970).
An Alabama State Trooper arrived at the accident before Cunningham and began questioning those who had seen Pate and Mihelic in the car shortly before the accident. The officer determined from those witnesses that Mihelic was driving the vehicle shortly before the accident. When Cunningham arrived, the officer told him, based on his investigation and the position of the bodies, which body was that of Mihelic and which was that of Pate. Another officer told the driver from the State Department of Forensic Sciences how to tag the bags in which the bodies were placed. While the bodies could have been identified through blood samples or an examination of the jawbones, we cannot, by taking advantage of hindsight, say that these tests should have been performed when they appeared unnecessary at the time. Even though the bodies were misidentified, we cannot say that there was a scintilla of evidence that the misidentification was due to wanton misconduct by Cunningham.
In addition, we cannot say that there was a scintilla of evidence that Mitchell and Sunset Funeral Home acted wantonly when they buried the bodies according to the identification supplied to them. The fact that Mitchell knew the necklace removed from the body of the man thought to be Pate was claimed by the Mihelics does not make his choice to proceed with the funeral wanton. Mitchell did not learn that there might have been a mistake in the identification of the bodies until the afternoon of *Page 350 
the funeral, and even then his doubts were slight. Mitchell had to consider his doubts on the one hand and the anguish that Pate's parents were already undergoing because of the death of their son on the other hand. Had Mitchell postponed the Pate funeral less than two hours before it was to take place, based only on the Mihelics' claiming of the necklace, and had it then been determined that the bodies were correctly identified all along, the plaintiffs might then, too, have said that Mitchell acted wantonly.
After reviewing all the evidence in the light most favorable to the plaintiffs, we can only say that the misidentification was an unfortunate event that, no doubt, resulted in Mrs. Hardy's suffering a great deal of pain; however, no one consciously and intentionally acted wrongfully or omitted a duty in reckless indifference to the consequences. Therefore, we hold that the trial court did not err in granting the defendants' motions for directed verdicts on the issue of wanton misconduct. While a jury verdict on the negligence counts is not dispositive, as a matter of law, of the wantonness counts, Canida v. U.S. Reduction Co., 294 Ala. 193,314 So.2d 279 (1975); Jones v. Sellers, 54 Ala. App. 599,311 So.2d 320 (1975), we further observe that in this case the jury returned a verdict in favor of the defendants on the simple negligence counts.
We must next address the plaintiffs' claim that the jury's verdict was contrary to the great weight of the evidence. The plaintiffs argue that Cunningham was negligent in relying on the Alabama State Troopers' identification of the bodies because it was Cunningham's responsibility to make a true identification of the bodies. They also argue that Sunset Funeral Home and Mitchell had a contractual duty to tell them of any doubts Mitchell had as to the identification of the bodies and that the failure to do so constituted negligence and fraud.
A jury's verdict is presumed correct and will not be disturbed unless plainly erroneous or manifestly unjust. This presumption of correctness is further strengthened when a motion for new trial is denied by the trial judge. Smith v.Blankenship, 440 So.2d 1063 (Ala. 1983); Cox v. Herrington,416 So.2d 968 (Ala. 1982); Williamson v. United Farm Agency, Inc.,401 So.2d 759 (Ala. 1981).
In reviewing the correctness of a jury verdict, this Court must review the record in a light most favorable to the appellee. Cox v. Herrington, supra; Cooper v. Peturis,384 So.2d 1087 (Ala. 1980).
The jury heard all of the testimony and the trial court's charge and returned a verdict in favor of all of the defendants. After reviewing the evidence in a light most favorable to the appellees, this Court does not believe the verdict was plainly erroneous or manifestly unjust.
AFFIRMED.
FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.