United American Insurance Company ("United American") appeals from a judgment on a bad faith action filed by Chester Brumley[1] against United American and other defendants. The jury awarded Mr. Brumley $1,005,000, and the trial court entered judgment on the verdict; the trial *Page 1233 
court denied United American's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. United American argues that the trial court should have directed a verdict in its favor on Mr. Brumley's bad faith claim, or, failing to grant the directed verdict, should have granted United American a judgment notwithstanding the verdict, a new trial, or a remittitur.
Throughout its entire brief, United American protests the findings of fact made by the jury. As the Court stated inHill Air of Gadsden, Inc. v. Marshall, 526 So.2d 15 (Ala. 1988):
 "Factual disputes are to be resolved by the trier of fact. . . . A jury's verdict is presumed correct and will not be disturbed unless plainly erroneous or manifestly unjust. This presumption of correctness is further strengthened when a motion for new trial is denied by the judge. Pate v. Sunset Funeral Home, 465 So.2d 347
(Ala. 1984)."
526 So.2d at 17. Accordingly, we present those facts which the jury could have found that support Mr. Brumley's claim, though we will also note that version of the facts that United American contends the jury should have found.
John Dollar and Karen Hill, United American agents, sold Chester Brumley a United American "Medicare supplement" policy[2] that Dollar said would "pay one hundred percent of what your other insurance won't pay." When Mr. Brumley applied for the policy in August 1983, he was 64 years old and was not covered by Medicare, and Mr. Brumley's application for United American's insurance stated both of these facts. United American agreed to sell Mr. Brumley the insurance, and he paid the insurance premium. Mr. Brumley's insurance policy stated at paragraph 6:
 "[I]f you have not established entitlement to hospital and/or medical insurance benefits under Medicare, we will pay the benefits provided under this policy as though you had established entitlement."
In December 1983, Mr. Brumley was hospitalized for about a week for heart problems and dizzy spells. He was released from the hospital but returned once for an EEG test. Mr. Brumley received a bill from the hospital, a doctor's bill, and a bill for the EEG test.
Sometime between February and May 1984, Mr. Brumley's wife, Ethel, mailed the three bills to United American at the address indicated on United American envelopes. United American did not respond in any way. About August 1984, Mr. Brumley told United American agent Karen Hill that United American had not responded in any way to the claim he had filed. Hill took copies of the bills and gave the copies to Denver Green, United American's manager for eight counties in northwest Alabama; Green's duties included assisting policyholders in filing claims. Green mailed copies of the bills to United American, and Mr. Brumley received a letter from Hill dated September 25, 1984, that stated that Mr. Brumley's claim had been filed. United American sent Mr. Brumley a slip that stated:
 "Your policy is a Medicare supplement contract. In order to pay benefits, we need the EXPLANATION OF MEDICARE BENEFITS or YOUR RECORD OF PART B MEDICARE BENEFITS USED forms sent you by Medicare.
 "If you have recently sent these forms, disregard this notice. If you are not eligible to receive Medicare Part B, please return the enclosed bills with a note to that effect.
"Policy Benefits Department"
Shortly after receiving this slip, Mrs. Brumley wrote a letter to United American explaining that Mr. Brumley did not have Medicare because he was 64 years old. United American did not respond.
Mrs. Brumley telephoned Hill, and Hill telephoned United American's home office. Hill spoke to Janet Babb, a United American supervisor. Hill testified to the following conversation with Babb: *Page 1234 
"Q. What did you tell Mrs. Babb or she tell you?
 "A. She told me the reason they refused to pay was because Mr. Brumley did not have Medicare at that time.
"Q. What did you say to that?
 "A. I just told her that they were supposed to pay as though he had Medicare.
"Q. What did she say to that?
 "A. They still refused to pay because he didn't have Medicare."
Hill further testified on cross-examination:
 "Q. When you were talking to Mrs. Babb, did she say anything to you about the need of this 'Explanation of Medicare Benefit' form that is referred to here in this note?
 "A. No, sir. She just explained to me that the reason they were not paying is because he did not have Medicare."
Hill contacted Green and told him about her conversation with Babb. Green telephoned United American and was transferred to a claims representative named Betty, the person to whom Babb had previously spoken about Mr. Brumley's claim. Betty admitted to Green that she had told Babb that Mr. Brumley's claim was not payable because Mr. Brumley did not have Medicare; however, Betty now told Green this was a mistake, and to resubmit the claim with a letter to her attention. That same day, Green mailed the bills back to United American and to Betty's attention.
United American responded by sending another "Medicare Explanation of Benefits" form to the Brumleys. The Brumleys contacted Green. Even before Green had contacted Babb and Betty, Green had submitted the bills with a cover letter stating both that Mr. Brumley did not have Medicare and that he should be paid under paragraph 6 of his policy. When Green learned of the latest slip sent to Mr. Brumley, he called United American a second time. He talked to a claims supervisor. Following the directions of the claims supervisor, Green submitted the claim with another cover letter to the attention of the claims supervisor and wrote "resubmitted November 15, 1984" on the bills. United American sent the Brumleys a slip identical to the other slips United American had already sent. After this response from United American, Green gave up, saying he had done everything he knew to do to get the claim paid.
In November or December 1984, Mrs. Brumley wrote a letter sending one of the "slips" back to United American, informing the insurance company that she was cancelling the policy because United American would not pay Mr. Brumley's claim, and requesting that United American return that portion of the premiums applicable to the remainder of the term. On January 3, 1985, United American wrote Mr. Brumley and refused to refund any of Mr. Brumley's premium; the letter did not mention Mr. Brumley's claim, which Mrs. Brumley had specifically referred to in her letter.
Two months later, in March 1985, Mrs. Brumley wrote to United American, again complaining of United American's "unfair treatment" of Mr. Brumley. United American did not respond. On June 7, 1985, Mrs. Brumley wrote another letter to United American requesting payment for Mr. Brumley's claim.
United American counters Mr. Brumley's evidence with testimony from its employees that United American simply did not receive most of the telephone calls, claims, and other correspondence that Mr. Brumley's evidence indicated occurred. United American conceded that it had sent to the Brumleys at least one "slip" requesting information on what benefits Medicare would pay. United American did not contradict that Mr. Brumley's application for the insurance policy United American sold him stated both Mr. Brumley's age and that Mr. Brumley was not on Medicare. United American states that it did receive Mr. Brumley's June 7, 1985, correspondence.
Also on June 7, 1985, Mr. Brumley filed a complaint against United American, National Consultants, Inc., Torchmark Corporation, and John Dollar. The complaint asserted claims for fraud and misrepresentation, conspiracy to defraud, breach of contract, bad faith, outrageous conduct, *Page 1235 
and violations of Ala. Code 1975, § 27-12-4. All claims and defendants were dismissed except for the breach of contract and bad faith claims against United American, which were submitted to the jury. The jury returned a $1,005,000 verdict for Mr. Brumley; the award was $5,000 compensatory damages and $1,000,000 punitive damages. The trial court entered judgment on the verdict and denied United American's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
United American argues that the trial court should have directed a verdict in its favor on the bad faith claim because Mr. Brumley did not meet the "directed verdict on the contract" requirement of bad faith cases; it further argues that it was entitled to a directed verdict because Mr. Brumley did not prove the other elements of bad faith.
In Alabama there are two "prongs" to a bad faith action. This Court stated those "prongs" in Jones v. Alabama Farm BureauMutual Casualty Co., 507 So.2d 396, 399 (Ala. 1986):
 "[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either '(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.' "
The plaintiff in a bad faith action has a heavy burden,National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357
(Ala. 1982), and the elements of bad faith refusal to pay are:
 "(a) An insurance contract between the parties and a breach thereof by the defendant;
 "(b) An intentional refusal to pay the insured's claim;
 "(c) The absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) The insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."
Independent Life Accident Ins. Co. v. Parker, 449 So.2d 233
(Ala. 1984).
United American points out that in connection with these holdings the Court has held that usually for a plaintiff to make a prima facie case of bad faith, he must be entitled to a directed verdict on the underlying claim alleging breach of the insurance contract:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of this claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
National Savings Life Ins. Co. v. Dutton, supra, at 1362.
United American contends that Mr. Brumley could not have been granted a directed verdict on the contract. United American argues this on two bases: It claims it could not have calculated the amounts due under the policy, and further argues that it did not receive the bills or letters or telephone calls from Mr. or Mrs. Brumley or Hill or Green.
United American's argument that it could not have calculated the amounts due under the policy will not withstand scrutiny. Mr. Brumley's policy clearly states that even if he is not entitled to Medicare benefits, the policy will pay as though he was so entitled. Mr. Brumley's application stated explicitly both his age and that he was not on Medicare. United American's argument seems to be that, in order for United American to calculate the amount due under the claim, Mr. Brumley would *Page 1236 
have to present evidence of what Medicare would have paid had he been eligible for it. Even conceding this point to United American would not establish a debatable reason for denying the claim, however, because United American's own correspondence stated, "If you are not eligible to receive Medicare, please return the enclosed bills with a note to that effect." Mr. Brumley presented convincing evidence that he did exactly as he was asked to do. Nevertheless, United American did not respond. Mr. Brumley did everything United American asked him to do and more, following strictly the rules and procedures United American itself created; we refuse in this situation to allow United American's own after-asserted argument that it needed Medicare calculations from the Brumleys to insulate it from the submission of the bad faith claim to the jury.
Furthermore, the argument that United American actually could not have calculated the amount is unconvincing. Certainly, United American was better able to do so than the Brumleys were, and it was in the business of providing coverage based on such calculations.
United American substantially asserts that it did not receive until June 7, 1985, the bills or letters or calls from Mr. Brumley or Hill or Green. "Although the plaintiff's burden in a bad faith action is great, it should not be insurmountable."Jones, supra, at 401. To preclude Mr. Brumley's bad faith action by application of the "directed verdict on the contract" requirement, when the allegedly disputed factual issues arise solely from the statements of United American, would put too onerous a burden on Mr. Brumley. The policy noted in Jones is present here: it would frustrate the purpose of the bad faith action to allow an insurer to prevent a bad faith claim from going to the jury by feigning ignorance of the claim or misrepresenting the content of oral or written communications. Accordingly, we hold that the trial court did not violate the "directed verdict on the contract" requirement of bad faith claims by submitting the bad faith claim to the jury. Indeed, a directed verdict on the contract claim might well have been appropriate under these facts, but we need not reach that question.
United American argues vehemently that this Court should hold that the trial court should not have submitted the bad faith claim to the jury because, even allowing an exception to the "directed verdict on the contract" test, Mr. Brumley did not prove his case. This argument is little more than a plea for this Court to overrule the fact findings of the jury. According to the evidence presented at trial, Mr. Brumley's bills or claims were submitted to United American five times. Furthermore, Mrs. Brumley wrote United American three times about the bill, not including the final letter she wrote on the day Mr. Brumley filed the lawsuit. Hill called United American on the telephone about Mr. Brumley's claim once; Green wrote two letters about Mr. Brumley's claim and telephoned United American twice about Mr. Brumley's claim. United American reacted to these communications in three ways. First, United American simply never responded to some of these communications. Also, United American sent a "slip" to Mr. Brumley, requesting information it already had from Mr. Brumley's application for the insurance; nevertheless, both Mr. Brumley and Green repeatedly provided the information requested. Even after this information was repeatedly provided, United American took no further action on Mr. Brumley's claim, despite Mr. Brumley's repeated attempts to have the claim processed. Finally, the one letter United American wrote Mr. Brumley refused to return his premium and never even mentioned his claims. Considering this evidence plus the other evidence presented at trial, particularly the evidence about the policy itself and the content of the "slips" United American sent, we hold that there was sufficient evidence to submit to the jury Mr. Brumley's claim that United American intentionally failed to determine whether there was a lawful basis for paying his claim.
United American argues that the evidence does not support a compensatory award of $5,000. Mr. Brumley presented *Page 1237 
evidence indicating that his hospital bill was $1,133.50, that his EEG bill was $93.50, that his doctor's bill was $626.53. This economic loss, as well as damages for mental anguish, is compensable in a badfaith action. Chavers v. National SecurityFire Casualty Co., 405 So.2d 1, 7 (Ala. 1981). Considering the evidence Mr. Brumley presented, we hold that the compensatory damages verdict was permissible.
United American contends that the trial court should have granted its motion for judgment notwithstanding the verdict. This Court, when reviewing the correctness of the jury's verdict, must review the record in the light most favorable to Mr. Brumley. Pate v. Sunset Funeral Home, 465 So.2d 347, 350
(Ala. 1984). A jury's verdict is presumed correct and will not be disturbed unless either plainly erroneous or manifestly unjust. Id. Considering the facts set forth in this opinion, as well as the evidence in the entire record, we hold that the jury's verdict was neither plainly erroneous nor manifestly unjust.
United American argues that its motion for new trial should have been granted. It first argues that the jury verdict is against the great weight of the evidence and that to let the verdict stand would sanction a "palpably wrong and manifestly unjust result." See, Wright v. Fountain, 454 So.2d 520, 524
(Ala. 1984). We disagree. As we have stated previously, ample evidence supported the jury's verdict; the trial court did not err in denying United American's motion for a new trial on this ground.
United American argues that the trial court committed reversible error when the court did not grant its motion for new trial, or, in the alternative, remittitur based on allegedly improper statements made by Mr. Brumley's lawyers in their closing statements. United American mentions several individual statements as the basis for this argument, then claims that all the statements cumulatively were prejudicial and inflammatory. While we disagree generally with United American's argument, one of the statements by Mr. Brumley's lawyer merits discussion. The lawyer said: "Ladies and gentlemen, a corporation can't be put in jail because it doesn't have a soul." United American immediately objected to this statement, and the trial court immediately sustained the objection. The trial court told the jury to disregard the statement.
When this Court reviews the propriety of a lawyer's closing argument "[i]n a case where objection to improper argument is made and sustained, with immediate and strong action by the trial court instructing the jury that such argument was not correct and admonishing them not to consider it, the test on motion for new trial and on appeal is whether the argument was so harmful and prejudicial that its influence was not or could not be eradicated by the action of the court." Otis ElevatorCo. v. Stallworth, 474 So.2d 82, 84 (Ala. 1985), quoting EstisTrucking Co. v. Hammond, 387 So.2d 768, 771-72 (Ala. 1980) (emphasis omitted). Undeniably, Mr. Brumley's lawyer's saying that a corporation could not be put in jail because it has no soul was improper argument; the trial court properly sustained the objection and properly instructed the jury to disregard the statement. The dispositive issue, thus, under the holding ofOtis Elevator Co., is whether the argument was "so harmful and prejudicial that its influence was not or could not be eradicated by the action of the court.[3] Otis Elevator Co., at 84.
In addition to telling the jury to disregard the statement, the trial court orally charged the jury:
 "You are to decide this case solely upon the evidence which you have heard from the witness stand, together with all proper and reasonable inferences that can be drawn from that evidence. You are not to decide the case upon bias or *Page 1238 
sympathy or prejudice or any other emotion, but solely upon the evidence. And you swore to do that at the beginning of the trial yesterday when you took your oaths as jurors. You are judges. You are to be just as reasonable to both sides as if all twelve of you had on judicial robes because you are judges.
". . . .
 "A corporation is entitled to the same fair trial at your hands as a private individual. The law is a respecter of both persons and corporations and all persons including corporations stand equal before the law and are to be dealt with as equals in a court of justice."
Considering these instructions and considering that "seldom are remarks held to be beyond the corrective action of the trial court," Southern Life Health Insurance Co. v. Smith,518 So.2d 77, 81 (Ala. 1987), we hold that the corrective actions taken by the trial court eradicated any harmful and prejudicial impact of the remark by Mr. Brumley's lawyer. Accordingly, the trial court did not commit reversible error when it denied United American's motion for a new trial on the grounds just discussed.
United American argues other grounds for reversing the trial court's denial of United American's motion for new trial. United American argues that the verdict was contrary to the law, that it was rendered in disregard of the trial court's jury instructions, and, furthermore, that certain jury instructions were misleading and erroneous. All these arguments are meritless; the verdict was consistent with the law and with the trial court's jury instructions, and the trial court did not commit reversible error with the instructions it gave the jury.
United American further argues that punitive damages in bad faith actions are unconstitutional. At a pragmatic level this is essentially a challenge to the tort of bad faith itself; the insured could recover in contract for any breach of an insurance contract. Only the imposition of punitive damages, conditioned upon the insured's proof of bad faith, significantly distinguishes the damages recoverable in an action based on the tort of bad faith from the damages recoverable by an insured in an action based on contract.[4]
United American argues that punitive damages are unconstitutional because they are penal and, when imposed in a civil case such as this, violate the procedural safeguards accorded to criminal defendants. In Industrial Chemical Fiberglass Corp. v. Chandler, [Ms. 86-381, January 20, 1989] (Ala. 1989), we held that "punitive damages awarded in a civil proceeding are not subject to the constitutional restrictions of the Eighth Amendment, which applies to criminal proceedings only." Industrial Chemical, at ____. United American argues that an award of punitive damages violates criminal procedural safeguards guaranteed by constitutional provisions other than the Eighth Amendment; however, United American's entire argument on those points is one sentence long, too undeveloped to merit serious review by this Court.
United American asserts that its equal protection and due process rights are violated, because all contracts in Alabama contain a requirement of good faith and fair dealing,Chavers v. National Security Fire Casualty Co., 405 So.2d 1,6 (Ala. 1981), but only in insurance contracts can the party against whom the requirement of good faith was breached recover punitive damages.
Historically, legislatures and courts have treated the insurance industry as an industry affected with the public interest. Alabama regulates all insurance companies that do business in this State, through a department of insurance. Ala. Code 1975, title 27. The Motor Vehicle Safety-Responsibility Act, Ala. Code 1975, § 32-7-1 et seq., effectively requires operators of motor vehicles to have liability insurance. It *Page 1239 
is an accepted fact that insurance is an integral part of the prudent conduct of personal and business affairs.
Given that insurance is affected with the public interest, the law should not permit an insurance company to refuse or fail to pay valid claims purely for perceived economic reasons. Public policy demands that valid claims be promptly paid.
Other considerations support the recognition of the tort based on bad faith failure to pay an insurance claim. Insurance companies are in a bargaining position manifestly superior to that of their insureds. Insurance claimants, by definition, are calling upon insurance companies during times of need or crisis.
These considerations uniquely fit the insurance industry, so the classification of insurance companies as the sole potential defendants in bad faith actions is reasonable and does not violate those companies' right to equal protection of the laws.
United American argues, in conclusion, that a new trial or, in the alternative, a remittitur should have been granted because the punitive damages award was excessive and was the result of bias, passion, corruption, or other improper motive. After preliminary review, this Court remanded this case for entry of an order in conformity with Hammond v. City ofGadsden, 493 So.2d 1374 (Ala. 1986). See also Green Oil Co. v.Hornsby, 539 So.2d 218 (Ala. 1989). The court entered such an order, denying any remittitur. We see no reason to overturn the trial court's finding that the verdict was not the result of bias, passion, prejudice, or other improper motive. The evidence supports the verdict in this case, and, comparing it to other recent cases of a similar nature, we do not find the verdict so excessive as to warrant our overturning the trial court's denial of a remittitur.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] Chester Brumley died on March 11, 1988, and his wife Ethel, as executrix of his estate, was substituted as the appellee.
[2] Medicare is a program established by the United States government to provide health insurance for the aged and disabled. See, e.g., 42 U.S.C. § 426 and § 1395 et seq.
[3] We note that United American cites both Gordon v. Nall,379 So.2d 585 (Ala. 1980), and Commercial Fire Insurance Co. v.Allen, 80 Ala. 571, 1 So. 202 (1887), for its contention that the statement by Mr. Brumley's lawyer led to reversible error. These cases are distinguishable because they involve situations where the trial court overruled the defendants' objection to the plaintiff's using language similar to the language that Mr. Brumley's lawyer used.
[4] Admittedly the tort of bad faith does allow for the recovery of some compensatory damages that cannot be recovered in a contract action on the policy, for example, damages for mental anguish, but it is the imposition of punitive damages that significantly distinguishes the damages recoverable in the tort action from those in the contract action.