William Clements brought this action in the Circuit Court of Lee County, Alabama, under the Alabama Medical Liability Act of 1987, against Dr. John Alvan Stewart, P.C., and Dermatology Clinic. (Our references hereinafter will be only to Dr. Stewart as the defendant.) The plaintiff contended that: *Page 860 
 "1) The defendant negligently failed to perform further excision of a cancerous lesion and to submit same for pathological analysis immediately following his receipt of the pathologist's report on the tissue removed at the time of the initial excision procedure;
 "2) As [a] result of such negligence, there was an approximately ten-month delay in adequate excision of the cancerous lesion and concomitantly, a substantial decrease in plaintiff's chances of surviving his cancer. More specifically, said negligence has resulted in a decrease in plaintiff's life . . . expectanc[y], and has and will in the future cause him to suffer mental anguish and emotional distress."
The defendant denied any negligence and contended that his treatment of the plaintiff met or exceeded the applicable standard of care (Ala. Code 1975, § 6-5-542(2)). The case was tried to a jury, which returned a verdict in favor of the defendant. The plaintiff appealed, arguing three issues for our review.
 I. Whether Ala. Code 1975, § 6-5-542(5), violates Article IV, §104(9), of the Constitution of Alabama of 1901.
Alabama Code 1975, § 12-21-12, provides, in pertinent part:
 "(a) In all civil actions brought in any court of the state of Alabama, proof by substantial evidence
shall be required to submit an issue of fact to the trier of the facts. . . .
". . . .
 "(d) Substantial evidence shall mean evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven. . . ."
(Emphasis added.)
Subsequent to the enactment of § 12-21-12, the Alabama Medical Liability Act of 1987, Ala. Code 1975, §§ 6-5-540
through 6-5-552, was enacted. Section 6-5-542 provided, in pertinent part:
 "For the purposes of [the Alabama Medical Liability Act of 1987] the following terms shall have the meanings respectively ascribed to them by this section:
". . . .
 "(5) SUBSTANTIAL EVIDENCE. Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed."
The plaintiff contends that because the definition of "substantial evidence" applicable in actions under the Alabama Medical Liability Act of 1987 is different from the definition of "substantial evidence" in all other civil actions, §6-5-542(5) violates Article IV, § 104, of the Constitution. Article IV, § 104, provides, in pertinent part:
 "The legislature shall not pass a special, private, or local law in any of the following cases.
". . . .
 "(9) Exempting any individual, private corporation, or association from the operation of any general law;
". . . .
 "The legislature shall pass general laws for the cases enumerated in this section. . . ."
(Emphasis added.)
The word "exempt" is defined in Black's Law Dictionary 571 (6th ed. 1990) as follows:
 "To release, discharge, waive, relieve from liability. To relieve, excuse, or set free from a duty or service imposed upon the general class to which the individual exempted belongs; as to exempt from military service."
It is not clear how health care providers are exempted from a general law by the enactment of § 6-5-542(5). The wording of the statements of the quality and weight of the evidence necessary to submit an issue of fact to the trier of fact differs. However, with the judicial interpretation of §12-21-12(d) in West v. Founders Life Assurance Co. of Florida,547 So.2d 870, *Page 861 
871 (Ala. 1989) ("substantial evidence" was there defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved"), we cannot find that plaintiffs in actions against health care providers have a higher burden of proof under § 6-5-542 (which defines "substantial evidence" as "admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed") than under § 12-21-12(d), which the plaintiff describes as the "general law." This is a difference without a distinction.
Likewise, a "health care provider," as defined by §6-5-542(1) ("A medical practitioner, dental practitioner, medical institution, physician, dentist, hospital," and those other health care providers described in § 6-5-481 and Ala. Code 1975, § 22-21-20), is not an individual or corporation.
"Association" is defined in Black's Law Dictionary 121 (6th ed. 1990) as "[a]n unincorporated society; a body of persons united and acting together without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." "Association" is defined in The American Dictionary of the English Language 80 (1969) as "[a]n organized body of people who have some interest, activity, or purpose in common; a society; league." Health care providers are not united or acting together; they are a diverse group who provide health care in a number of different ways to a number of different individuals with a number of different health care needs. Health care providers would not be an "association," as that word is used in § 104 of the Constitution.
Likewise, § 104 of the Constitution does not prohibit the legislature from "[e]xempting any individual, private corporation, or association from the operation of any general law," if the legislature does this by a general law. It could be argued that the last paragraph of § 104 expressly empowers the legislature to exempt an individual, private corporation, or association from the operation of any general law by enacting a general law; but certainly there is no prohibition against it.
"[G]eneral law," "local law," and "special or private law" are defined in Article IV, § 110, Constitution, as:
 "A general law within the meaning of this article is a law which applies to the whole state; a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole; a special or private law within the meaning of this article is one which applies to an individual, association, or corporation."
So a "special or private" law that cannot exempt any individual, private corporation, or association is a law that applies only to an individual, association, or corporation.
In Reese v. Rankin Fite Memorial Hospital, 403 So.2d 158, 162
(Ala. 1981), the Alabama Medical Liability Act of 1975 was challenged as violating § 104 of the Constitution. This Court held:
 "The last argument made is that the [Alabama Medical Liability Act of 1975] violates § 104 . . . of the state constitution. Again, we disagree. [This] constitutional provision den[ies] to the legislature power to enact special, private, or local laws. Such laws are defined in § 110 of the Constitution. The Alabama Medical Liability Act does not fall within the constitutional definition of special, private, or local laws. Rather, it is a general law as defined by that section: 'A general law within the meaning of this article is a law which applies to the whole state. . . .' It operates throughout the state alike on all the people or all the people of a class. Holt v. Mayor of Birmingham, 111 Ala. 369, 19 So. 735 (1896)."
(Emphasis added.)
Reese v. Rankin Fite Memorial Hospital, supra, held that, despite the fact that the Alabama Medical Liability Act of 1975 dealt only with actions against health care providers, it applied uniformly to an entire class and was statewide in application and, *Page 862 
therefore, was a general law rather than a special or private law.
There is no difference in the scope of the Alabama Medical Liability Act of 1987 and the scope of the Alabama Medical Liability Act of 1975. Both deal only with actions against health care providers, both apply uniformly to an entire class, and both are statewide in application. Both apply to a shifting class of both medical malpractice plaintiffs and medical malpractice defendants. The Alabama Medical Liability Act of 1987 is statewide and comprehensive in its application toall causes of action against health care providers that accrue after June 11, 1987; therefore, "[i]t operates throughout the state alike on . . . all the people of a class." Reese v.Rankin Fite Memorial Hospital, supra; Holt v. Mayor ofBirmingham, 111 Ala. 369, 19 So. 735 (1896).
We have considered the authorities cited in the plaintiff's initial brief on this issue. Although the arguments are impressive, we are reluctant at this time to overturn a line of cases both predating the present Constitution (Holt v. Mayor ofBirmingham, supra) and as recent as 1981 (Reese, supra), and holding that a "general law," as defined in § 104 of the Constitution and its predecessor in the Constitution of 1875, is a law that operates throughout the state alike on all the people or on all the people of a class.
 II. Whether the plaintiff was prejudiced when he was notpermitted to question the defendant as to statements containedin a medical text that was not admitted into evidence.
In the pretrial order in this case, the trial court required that "each of the parties to this litigation . . . furnish or make available to each of the other parties for inspection and copying all documents, bills, reports, photographs, and other exhibits which each such party intends to utilize at trial." (Emphasis added.) In compliance with the pretrial order, each party provided the other party with medical literature that each party intended to utilize at trial.
During the trial, the plaintiff, in his case in chief, called the defendant as an adverse witness and attempted to question the defendant concerning his agreement or disagreement with statements contained in a medical text entitled Color Atlas andSynopsis of Clinical Dermatology, which had not been listed or furnished to the defendant as medical literature that the plaintiff intended to utilize at trial. The defendant objected, based on the fact that this particular text had not been named as an exhibit that the plaintiff would utilize at trial. The trial court sustained the objection. The plaintiff contends that this was a prejudicial abuse of discretion, under the authority of Harrison v. Wientjes, 466 So.2d 125 (Ala. 1985); and Metropolitan Life Insurance Co. v. Nichols, 393 So.2d 966
(Ala. 1981).
Neither Harrison nor Metropolitan Life involved the questioning of a witness by use of a treatise that had not been listed pursuant to a pre-trial order. Therefore, they are not persuasive as to whether the trial court erred to reversal. In this case, the trial court found that the plaintiff knew that he was going to use Color Atlas prior to trial, but failed to advise the defendant of this, and that this was a violation of the pretrial order. The trial court did not abuse its discretion in precluding the use of this treatise. Epperson v.Poe, 533 So.2d 204 (Ala. 1988); Hughes v. Arlando's Style Shop,399 So.2d 830 (Ala. 1981); Stephens v. Central of Georgia R.R.,367 So.2d 192 (Ala. 1978).
PER CURIAM.
 III. Whether the plaintiff was unfairly prejudiced by not beingpermitted to question the defendant's medical expert witnessabout that witness's "recent involvement as a defendant in amedical negligence action."
Before the defendant's medical expert witness testified, the defendant moved in limine to preclude the plaintiff from *Page 863 
cross-examining this witness "regarding the fact that he had been a defendant in a [medical negligence] lawsuit." The trial court granted the motion, stating as follows:
 "It will be the ruling of the Court that inquiry into a prior malpractice case involving this witness would be improper and would not be a legitimate subject of bias that would be inquired into in this trial. So, I would not permit [the plaintiff's counsel] to ask those questions."
The plaintiff contends that the trial court's ruling effectively denied him an opportunity to establish bias on the part of the defendant's medical expert and, therefore, that he is entitled to a new trial. We agree.
In Louisville N.R.R. v. Martin, 240 Ala. 124, 198 So. 141
(1940), this Court reversed a judgment entered on a jury verdict for the plaintiff against a railroad in a negligence action alleging the wrongful death of the plaintiff's intestate, on the ground that counsel for the railroad had not been permitted to cross-examine the plaintiff's key expert witness concerning that witness's previous discharges from two other railroads. This Court stated, in pertinent part, as follows:
 "Questions of evidence must be looked at from a practical and common sense standpoint, for the issues of fact are to be determined by common sense practical men. So viewing the matter, therefore we think the discharge of the witness Couch from two railroads was proper to be given to the jury from the standpoint of bias or prejudice. The jury had a right to know these facts in weighing the testimony of the witness, for we think it clear enough the jury could infer at least some degree of bias or prejudice against railroads in general, from a witness who has been discharged by two railroads and who has in recent years lent himself as a witness for plaintiffs in damage suits against them. Both reason and common sense [so] dictate.
 "In Adler v. Miller, 218 Ala. 674, 120 So. 153, 157[(1928)], we approvingly quoted the following observation from 2 Wigmore on Evidence, Section 949: 'The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place.'
 "And in the Adler case the court, speaking of the matter of cross-examination of a witness, said: 'In such inquiry a witness' social and business relations with the party, his intimacy or hostility, and such other circumstances as might reasonably create bias, prejudice, or hostility may be properly elicited for such limited purpose, for the consideration of the jury.'
 "And in Louisville N.R. Co. v. Courson, 234 Ala. 273, 174 So. 474, 476[(1937)]: 'Under the general rule, anything which tends to show bias, unfriendliness, enmity, or inclines the witness to swear against a party, is admissible.' See also Alabama Power Company v. Gladden, 237 Ala. 527, 187 So. 711 [(1939)].
 "We are, of course, mindful of the rule that the range of cross-examination rests largely in the discretion of the trial court, and the court's ruling thereon will not be here revised unless it is made clearly to appear that error intervened to the prejudice of the objecting party.
 "But the right of cross-examination is a valuable right 'probably and generally the most effective instrumentality for eliciting the witness' "means of obtaining correct and certain knowledge of the facts to which he bears testimony." ' Tate v. State, 86 Ala. 33, 5 So. 575
[(1889)].
 "The question is discussed in Wilson v. State, 195 Ala. 675, 71 So. 115, 117 [(1916)], with reference to expert witnesses, as here, and we there observed: 'It is usual in cross-examination that great liberty is allowed by the court. And while the right to cross-examine may be afforded the defendant, yet if it is so circumscribed and limited as to strip it of its benefit, the right "loses its substance and becomes a shadow." ' "
240 Ala. at 129, 198 So. at 144-45. See, also, Jones v. PizzaBoy, Oxford, Inc., *Page 864 387 So.2d 819 (Ala. 1980), wherein this Court stated that the plaintiff was entitled to cross-examine the defendant's medical expert concerning defense counsel's representation of the witness in a pending malpractice suit.
In the present case, the testimony of the defendant's medical expert was critical to the defendant's case, in that it was contrary to the opinion that had been expressed by the plaintiff's expert witness, which was to the effect that the defendant had deviated from the appropriate standard of care. The plaintiff made an offer of proof outside the presence of the jury that showed that the defendant's medical expert had been a defendant in a medical malpractice action; that the witness had been represented in that action by the same law firm that now represents the defendant; and that that action had been settled. Although we are mindful of the trial court's considerable discretion in ruling on evidentiary matters of this kind, we believe that the trial court unduly and unnecessarily restricted the plaintiff's cross-examination of this witness with respect to any bias that he may have had against plaintiffs in medical malpractice actions and that, as a result, the plaintiff's case was substantially prejudiced. See Louisville N.R.R. v. Martin, supra, 240 Ala. at 132,198 So. at 147, wherein this Court pointed out that "[n]ot only is there allowable great latitude on cross-examination of a witness, but this latitude is enlarged as to [an] expert witness."
Based on this Court's holding as to issue III, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur as to issues I and II.
ALMON, J., concurs in the result as to issue I and expresses no opinion as to issue II.
HORNSBY, C.J., expresses no opinion as to issues I and II.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur as to issue III.
MADDOX, HOUSTON and STEAGALL, JJ., dissent as to issue III.