746 So.2d 960 (1999)
Ex parte PFIZER, INC., and Valleylab, Inc.
(Re M.B., a minor, etc. v. Valleylab, Inc., et al.).
1980155.
Supreme Court of Alabama.
June 4, 1999.
Rehearing Denied October 22, 1999.
*961 Joseph S. Bird III and John E. Goodman of Bradley, Arant, Rose & White, L.L.P., Birmingham; Fred W. Ajax, Jr., and Susan Teale Couvillon of Smith, Howard & Ajax, L.L.P., Atlanta, GA; and Robert H. Smith of Galloway, Smith, Wettermark & Everest, L.L.P., Mobile, for petitioners.
Tom Dutton of Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, for respondent M.B.
Norman E. Waldrop and Clifford C. Brady of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C., Mobile, for respondent Dr. William E. Thomas.
A. Neil Hudgens and Thomas H. Nolan, Jr., of Brown, Hudgens, P.C., Mobile; and R. Alan Alexander of Helmsing, Lyons, Sims & Leach, Mobile, for respondent Atmore Community Hospital.
Walter W. Bates, Robert P. MacKenzie III, and W. Christian Hines III of Starnes & Atchison, L.L.P., Birmingham, for respondent Mutual Assurance, Inc.
HOOPER, Chief Justice.
Two defendants, Pfizer, Inc., and Valleylab, Inc. (hereinafter together referred to as "Valleylab"), have petitioned for a writ of mandamus directing the Circuit Court of Escambia County to vacate two rulings denying discovery sought by Valleylab in a medical-malpractice/products-liability case pending in that court. We deny the petition as it relates to discovery of the documents requested from an insurer's investigative file, except Item 383. We grant the petition as to Item 383, finding that item to be discoverable. We also grant the petition as it relates to discovery of the medical records of circumcisions performed by the petitioners' codefendant Dr. William E. Thomas from January 1986 through the present.

Facts
The plaintiff in this case, M.B., is a minor. On August 21, 1991, Dr. Thomas performed a circumcision on M.B., then seven years of age, at Atmore Community Hospital. During the procedure, Dr. Thomas used a medical device called an "electrosurgical unit," or ESU, to cauterize bleeding blood vessels at the surgical site. An ESU is a general-purpose surgical device that utilizes a high-frequency electrical current. Valleylab manufactured the ESU the plaintiff alleges was used during the procedure. Valleylab was a wholly owned subsidiary of Pfizer, Inc., at the time of the acts giving rise to M.B.'s lawsuit.
After the procedure was performed, infection and eventually gangrene developed around the surgical site. Three-fourths of M.B.'s penis had to be removed because of the severity of the infection.
M.B., acting through his next friend, filed a complaint on August 2, 1993, against Dr. Thomas and Atmore Community Hospital, alleging medical malpractice, and against Pfizer and Valleylab, alleging various claims grounded in products liability. Mutual Assurance, Inc., Dr. Thomas's liability insurer, compiled an investigative file regarding the incident.
Valleylab made a discovery request that extended to 22 documents contained in Mutual Assurance's investigative file. The trial court compelled production of 7 of the 22 documents, but denied discovery as to the other documents.
*962 Valleylab also sought discovery of medical records of all circumcisions performed by Dr. Thomas since January 1986; on May 21, 1997, the trial court ordered the production of these records, but with a privacy order. On September 14, 1998, on motion of Dr. Thomas and Atmore Community Hospital, the trial court vacated its May 21 order compelling discovery of these records, and denied that discovery. On October 13, 1998, Valleylab filed this mandamus petition.
Valleylab argues that the circuit court abused its discretion (1) in its order denying discovery of 15 documents contained in the investigative file of Dr. Thomas's insurance carrier and (2) in its order denying Valleylab's request for discovery of medical records regarding other circumcisions performed by Dr. Thomas since January 1986.

Writ of Mandamus
The writ of mandamus is an extraordinary remedy, and one petitioning for that writ must show "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 890 (Ala.1991); see also, Martin v. Loeb & Co., 349 So.2d 9 (Ala.1977); Ex parte Slade, 382 So.2d 1127 (Ala.1980); Ex parte Houston County, 435 So.2d 1268 (Ala.1983); Ex parte Johnson, 638 So.2d 772 (Ala.1994). "Mandamus is an extraordinary remedy and will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner except where there is an abuse of discretion." State v. Cannon, 369 So.2d 32, 33 (Ala. 1979).

Discovery of the Investigative File
Valleylab first argues that the trial court abused its discretion when it denied Valleylab's requested discovery of 15 documents that are part of Mutual Assurance's investigative file on the incident. Mutual Assurance contends that the documents sought by Valleylab were prepared in anticipation of litigation and therefore are not subject to discovery by Valleylab.
Valleylab served a notice of deposition on Mutual Assurance, together with a subpoena duces tecum, seeking testimony and production of documents concerning certain matters in Mutual Assurance's investigative file. Mutual Assurance, a nonparty as to this lawsuit, moved to quash the subpoena and the notice of deposition and also moved for a protective order. After conducting a hearing, the circuit court allowed discovery of 7 items, but denied Valleylab's request for discovery of 15 of the documents.
The 15 documents now sought by Valleylab consist of handwritten notes made by claims representatives, including incident reports and documentation of investigative activities and notes from interviews of witnesses. Valleylab argues that the attorney-client privilege does not apply to these documents; it contends that the notes and documents that are part of Mutual Assurance's investigative file regarding M.B.'s case were not prepared in anticipation of litigation and are not privileged. Specifically, Valleylab seeks to discover specific notes made by the insurer's claims representative concerning nurse Carol Miller's account of the events that occurred during the circumcision.
Rule 26(b)(3), Ala.R.Civ.P., sets out the "work-product doctrine":
"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's *963 case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
With respect to discovery matters, this Court has stated that the trial court has very broad discretion and that "its ruling on discovery matters will not be reversed absent a clear abuse of discretion." Ex parte Wal-Mart Stores, Inc., 682 So.2d 65, 67 (Ala.1996). Except as to Item 383, Valleylab has shown no clear abuse of discretion on the part of the circuit judge in his order denying discovery of the 15 items in Mutual Assurance's investigative file. Item 383 is a letter written by attorney Tom Dutton in reply to a January 18, 1993, letter from attorney Boyd Reeves. This letter was from counsel for one party to opposing counsel. Therefore, it was not the work product of the insurer. This letter is not covered by the work-product rule and is discoverable by Valleylab.
As to the other documents requested from the investigative file, it appears that Valleylab has had ample opportunities to interview, depose, and question Carol Miller. Valleylab will suffer no undue hardship in gaining, through other means, the information it says it believes would be gained by examining documents in the insurance company's investigative file. Valleylab would like to discover additional information regarding notes taken by the insurance investigators regarding the testimony given by Miller in her depositions. Miller's account of the events differs from the accounts given by the other operating-room personnel. The mere fact that Miller's account of the incident differs from the accounts of other witnesses is insufficient to mandate discovery of the insurance company's investigative file. The parties have deposed Miller over 10 times to properly ascertain her version of the events. The record before us indicates no reason why Valleylab could not have obtained from other sources the information it seeks from the insurer's file. The fact that witnesses disagree on the events in question in a lawsuit is no reason to violate the work-product doctrine.
The insurer contends that on the day after the incident was reported to it, it contacted its legal counsel regarding the incident because it assessed M.B.'s case as one that would be litigated. Mutual Assurance was notified soon after the incident that a well-known plaintiffs' lawyer had requested M.B.'s medical records. The contents of the investigative file Valleylab seeks were related to, and were prepared in anticipation of, litigation, with the exception of Item 383. Valleylab should have been able to ascertain the information it seeks through other methods that would not cause it undue hardship.
Valleylab seeks discovery of the 15 documents in question because it says it believes these documents may contain further information concerning Miller's account of the events that took place during the circumcision. This Court can determine no reason why Valleylab, through its extensive depositions, interviews, and interrogations of both Miller and the other personnel involved, could not ascertain the varying accounts of what happened during the circumcision. Valleylab has not shown that it will incur an undue hardship if it has to secure through other means the information contained in the investigative file. There appears to be no reason why Valleylab could not gain this information through its own questioning of witnesses.
As to the materials in the insurer's investigative file, we conclude that the circuit court should have ordered the discovery of Item 383, but otherwise we see no *964 abuse of discretion in the circuit court's denial of discovery as to those materials. As to Item 383, the petition will be granted; as to the other items it will be denied.

Discovery of Medical Records
Valleylab also argues that the trial court abused its discretion in denying discovery of medical records of other circumcisions performed by Dr. Thomas. Valleylab argues that its defense rests on determining whether M.B.'s injuries were due solely to acts or omissions of medical negligence; or were due solely to the effects caused by a defective product; or were due to a combination of medical negligence and the effects of a defective product.
Pfizer, Valleylab, Dr. Thomas, and Atmore Community Hospital are all defendants in M.B.'s medical-malpractice/products-liability action. M.B. is the plaintiff. Section 6-5-551, Ala.Code 1975 (part of the Alabama Medical Liability Act of 1987), states: "Plaintiff [in an action against a `health care provider'] shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission." (Emphasis added.) Valleylab is a codefendant, not a plaintiff, in M.B.'s action. It is Valleylab, not M.B., that seeks production of the medical records. Section 6-5-551 uses the word "plaintiff" and not the word "party" or "parties." Because Valleylab, the party seeking discovery of the medical records, is a codefendant and not a plaintiff, § 6-5-551 does not prevent Valleylab from discovering the records of other circumcisions performed by Dr. Thomas.
"When the language of a statute is plain and unambiguous, as in this case, courts must enforce the statute as written by giving the words of the statute their ordinary plain meaningthey must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature." Ex parte T.B., 698 So.2d 127, 130 (Ala.1997). Justice Houston wrote the following for this Court in DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala.1998):
"In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'

Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)); see also Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n, 589 So.2d 687, 689 (Ala.1991); Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm'n, 524 So.2d 357, 360 (Ala. 1988); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984); Dumas Brothers Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534, 536 (Ala.1983); Town of Loxley v. Rosinton Water, Sewer & Fire Protection Auth., Inc., 376 So.2d 705, 708 (Ala.1979). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala.1997)."
*965 If the legislature had intended that sentence quoted above from § 6-5-551 to mean that a "party" (or the "parties") "shall be prohibited from conducting [certain] discovery," rather than that "[the][p]laintiff shall be [so] prohibited," then the legislature should have used a broader term. In the records sought, Valleylab may or may not find information helpful to its defense in this case. If it does, we can assume it will use the information at trial, and if it does then M.B., the plaintiff, will, as a result of Valleylab's discovery, gain access to the information contained in the circumcision records. Nevertheless, it is Valleylab, a codefendant, that seeks discovery of the medical records, not the plaintiff. There is no ambiguity in the word "plaintiff"; therefore, this Court may not attempt to discern some other meaning the legislature might have had but did not express in the statute.
The circuit court gave no reason for denying discovery of the 15 documents sought by Valleylab, nor did it give a reason for denying discovery of the medical records of Dr. Thomas's other circumcision patients. As to the discovery request concerning the records of other circumcisions performed by Dr. Thomas from January 1986 through the present, we grant the petition for a writ directing the circuit court to vacate its order denying discovery. We note the specific language of § 6-5-551. Atmore Community Hospital and Dr. Thomas rely heavily on this Code section in urging this Court not to allow discovery of these records. The plaintiff, M.B., is the only party barred by that statute from discovering these medical records; the codefendant Valleylab is not so barred.
If the circuit court, in denying Valleylab's requested discovery of the circumcision records, was relying solely upon § 6-5-551, then it erred in denying that discovery. As to those records, we grant Valleylab's petition for the writ of mandamus and direct the circuit court to vacate its order denying Valleylab's requested discovery.

Conclusion
We deny the petition for the writ of mandamus as it relates to the requested discovery of documents contained in the insurance company's investigative file, except as to Item 383. As to Item 383, we grant the petition and issue the writ of mandamus directing the trial court to vacate its order denying discovery; that item is discoverable by Valleylab.
We also grant the petition insofar as it relates to the circuit court's order denying Valleylab's requested production of the medical records concerning other circumcisions performed by Dr. Thomas from January 1986 through the present, and we direct the circuit court to vacate its order denying that discovery. The circuit court is directed to reconsider Valleylab's request for discovery of those records and to do so without reference to § 6-5-551. We note that when the circuit court initially allowed discovery of those records (by an order it later vacated), it did so with a privacy order directing that the patients' names be redacted. That concern for privacy was appropriate. If, after reconsidering Valleylab's request, the court orders production of these records, it should order the omission of the patients' names, as well as other items tending to identify the patients.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
MADDOX, HOUSTON, SEE, and BROWN, JJ., concur.
COOK and JOHNSTONE, JJ., concur in part and concur in the result in part.
KENNEDY, J., concurs in the result.
LYONS, J., recuses himself.
COOK, Justice (concurring in part and concurring in the result in part).
I concur in that portion of the opinion designated "Discovery of the Investigative *966 File." However, as to the portion designated "Discovery of Medical Records," I concur only in the result.
In that latter portion, the majority appears to be setting forth an ironclad rule, namely, that, under no circumstances would M.B., the plaintiff, be able to discover evidence of "any other act or omission," Ala.Code 1975, § 6-5-551, which, in this case, would be records of other circumcisions performed by the defendant doctor. Such a rule would be contrary to this Court's recent opinion in Ex parte McCollough, 747 So.2d 887 (Ala.1999). In that case, we explained that, under appropriate circumstances, evidence of other "acts" or "omissions" may be discoverable, notwithstanding § 6-5-551. As to the latter portion of the opinion, therefore, I concur only in the result.
JOHNSTONE, Justice (concurring in part and concurring in the result in part).
I concur with the discovery rulings of the main opinion regarding materials in the investigative file of Mutual Assurance. I concur only in the result of the ruling of the main opinion regarding discovery of other circumcisions performed by Dr. Thomas.
I must note with regard to the treatment of § 6-5-551, Ala.Code 1975, by the main opinion, as it pertains to discovery of other circumcisions performed by Dr. Thomas, that what is sauce for the goose should be sauce for the gander in future cases. Otherwise, allowing all parties except plaintiffs to discover similar acts or omissions by medical providers will be nothing more than allowing the legislature to rig cases against plaintiffs.