Ernest Middleton, as administrator of the estate of Lula Mae McDougle, deceased, appeals from a judgment entered on a jury verdict in favor of Robert Lightfoot, M.D., and Lightfoot and Lightfoot Surgery, P.C. (hereinafter referred to collectively as "Lightfoot"), in Middleton's medical-malpractice action based on the alleged wrongful death of McDougle. We reverse and remand.
 I. Facts and Background
On April 24, 2000, McDougle was admitted to the University of South Alabama Knollwood Park Hospital for surgery to relieve a condition diagnosed by Dr. Lightfoot as "cholelithiasis" (gallstones). Dr. Lightfoot performed a "cholecystectomy," that is, surgical removal of the gallbladder. He first attempted to remove the gallbladder "laparoscopically," that is, by inserting a series of "ports," or "trocars," into the abdominal wall, through which the gallbladder could be removed. He inserted an "umbilical trocar," which was approximately 11 millimeters in diameter, through the lower abdomen; however, he abandoned the laparoscopic procedure because his vision of and access to the gallbladder were obscured by "adhesions," that is, scar tissue or "extra-fibrous tissue." He then removed the trocars and made a larger incision in the lower abdomen, through which he extracted the gallbladder. McDougle was released from the hospital at approximately 9:15 a.m. the following morning, April 25. By 6:30 a.m. on April 26, McDougle was dead. An autopsy revealed an 11-millimeter perforation of the "jejunum," that is, the "small bowel," near the incision into which Dr. Lightfoot had inserted the "umbilical trocar" during the abortive laparoscopic cholecystectomy.
On August 25, 2000, Katherine Middleton, as administratrix and personal representative of McDougle's estate, sued Lightfoot. The complaint alleged, among other things, that Lightfoot "caused or negligently allowed the [gallbladder surgery] to be performed in such a manner that [McDougle] suffered a perforated [bowel], which led to acute peritonitis and infection that caused [her death]." (Emphasis *Page 113 
added.) It also alleged that Lightfoot allowed McDougle "to go without proper and necessary evaluation, work-up, diagnosis and treatment of her perforation and resulting peritonitis and prematurely and improperly discharged [her] in spite of signs and symptoms of her problems." Finally, the complaint averred that Lightfoot "negligently caused or allowed the perforation and resulting peritonitis to occur without proper and timely evaluation of the patient in spite of conditions which should have caused further concern and evaluation of potential complications." Subsequently, Ernest Middleton was substituted for Katherine Middleton as the administrator of McDougle's estate and thus the plaintiff.
The jury trial of the case focused primarily on two issues: (1) the cause of death, and (2) the standard of care. As for the cause of death, the autopsy report failed to attribute death to a specific cause. Middleton's theory of the case was that Dr. Lightfoot inadvertently punctured the bowel with the umbilical trocar during the laparoscopic procedure and failed to discover and treat the injury. According to this theory, the contents of the bowel escaped through the puncture, resulting in "acute peritonitis," infection, and ultimately McDougle's death. Middleton presented expert testimony indicating that Dr. Lightfoot had breached the standard of care in failing to discover and repair the perforation.
Lightfoot did not challenge the autopsy finding that McDougle's bowel was perforated at the time of her death, but challenged the theory that the perforation occurred during the surgical procedure, as well as Middleton's theory as to the cause of McDougle's death. According to Lightfoot, the perforation resulted, not from the insertion of the trocar, but from a bowel "impaction." According to that theory, death resulted, not from peritonitis or infection, but from a "pulmonary embolus," having no connection with the perforated bowel. The jury returned a verdict in favor of Lightfoot.
Middleton moved for a new trial, on the ground, among others, that the trial court erred in allowing Lightfoot to cross-examine Middleton's expert witness regarding medical-malpractice actions that have been brought against the witness. The trial court did not rule on the new-trial motion, and it was denied by operation of law. Ala. R. Civ. P. 59.1. Middleton appealed, reasserting his challenge to the evidence elicited on cross-examination of his expert witness.
 II. Standard of Review
"`The standard applicable to a review of a trial court's rulings on the admission of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to admit evidence.'" Mock v. Allen,783 So.2d 828, 835 (Ala. 2000) (quoting Wal-Mart Stores, Inc. v.Thompson, 726 So.2d 651, 655 (Ala. 1998)). Despite the latitude afforded the trial court in its evidentiary rulings, a trial court exceeds its discretion where it admits prejudicial evidence that has no probative value. See Powell v. State,796 So.2d 404, 419 (Ala.Crim.App. 1999), aff'd, 796 So.2d 434
(Ala. 2001).
"`The second principle "is that a judgment cannot be reversed on appeal for an error [in the improper admission of evidence] unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties."'" Mock, 783 So.2d at 835 (quoting Wal-Mart Stores, 726 So.2d at 655, quoting in turn Atkins v. Lee, 603 So.2d 937,941 (Ala. 1992)). See also Ala. R.App. P. 45. "The burden of establishing that an erroneous ruling was prejudicial is on the *Page 114 
appellant." Preferred Risk Mut. Ins. Co. v. Ryan,589 So.2d 165, 167 (Ala. 1991).
 III. Analysis
Before trial, Middleton filed a motion in limine, seeking to exclude evidence of medical-malpractice actions in which Dr. Mark Gordon, his expert witness, had been a defendant. The motion specifically sought to exclude any reference to one such case that "involved the cutting of a [bile] duct during gallbladder surgery," on the grounds that testimony as to that case would be irrelevant and prejudicial. The trial court denied the motion and the case proceeded to trial.
In order to establish that Dr. Lightfoot had breached the standard of care in treating McDougle, Middleton read into evidence at trial deposition testimony of Dr. Gordon. Dr. Gordon expressed the following opinions, among others: (1) that the perforation was caused by Dr. Lightfoot's insertion of the trocar, (2) that Dr. Lightfoot breached the standard of care in failing to discover and repair the perforation, and (3) that McDougle died "by sepsis from acute peritonitis" resulting from the perforation.
During the trial, Lightfoot's counsel prepared to read into evidence portions of Dr. Gordon's deposition involving malpractice actions in which Dr. Gordon had been a defendant. At that time, Middleton's counsel renewed their objections to the evidence on the grounds stated in the motion in limine. The trial court overruled the objection, and the testimony was read into evidence.
The testimony included specific references to three medical-malpractice actions that had been brought against Dr. Gordon, with particular emphasis on a case involving a laparoscopic cholecystectomy, in which Dr. Gordon mistook asmall bile duct for a vein and deliberately clipped the duct. In that connection, Lightfoot was allowed to show that the patient not only sued Dr. Gordon, but also sent him threatening correspondence.
Middleton argues that "[p]rior suits against [an expert] witness have no probative value and simply demonstrate an attempt to prejudice the jury regarding the witness." Middleton's brief, at 26. He contends that such testimony has "nothing to do with anything except to prejudice the jury into thinking [the] witness must be a bad doctor because he has been sued himself." Id. at 31.
Lightfoot contends that the testimony elicited from Dr. Gordon was relevant to show "bias and lack of credibility." More specifically, Lightfoot insists:
 "Dr. Gordon allegedly performed an inspection of the operative area [in the laparoscopic-cholecystectomy malpractice action against him] and did not
recognize the injury prior to the procedure being completed. The patient was sent home the same day of the procedure. Two days later the patient was admitted to the hospital to repair the injured common bile duct. Even though Dr. Gordon failed to identify the injury after inspecting the operative area and before closure, Dr. Gordon testified in his case, that he complied with the standard of care.
 "Dr. Gordon's [laparoscopic-cholecystectomy] case involves the same standard of care issues addressed in the present case, specifically, inspecting the operative area in abdominal surgery and attempting to identify any injury prior to closure. Dr. Gordon, however, has created two unique standards of care; one that applies to himself as a surgeon and one that applies to his role as a professional witness. The inconsistent nature of these standards of care shows *Page 115 
Dr. Gordon's bias [in favor of Middleton] and lack of credibility."
Lightfoot's brief, at 36 (emphasis in original) (citations to the record omitted). In support of that proposition, Lightfoot citesClements v. Dr. John Alvan Stewart, P.C., 595 So.2d 858 (Ala. 1992). Clements, however, is inapposite.
Clements was a medical-malpractice action brought by William Clements against Dr. John Alvan Stewart, P.C., and Dermatology Clinic (collectively referred to as "Dr. Stewart"). 595 So.2d at 859. "Before [Dr. Stewart's] medical expert witness testified, [Dr. Stewart] moved in limine to preclude [Clements] from cross-examining [the expert] witness `regarding the fact that he had been a defendant in a [medical negligence] lawsuit.'" 595 So.2d at 862-63. The trial court granted the motion, and Clements made that denial the basis for a motion for a new trial, after the jury returned a verdict in favor of Dr. Stewart. 595 So.2d at 863. The issue presented on appeal was "[w]hether [Clements] was unfairly prejudiced by not being permitted to question [Dr. Stewart's] medical expert witness about that witness's `recent involvement as a defendant in a medical negligence action.'" 595 So.2d at 862 (emphasis omitted).
This Court answered that question in the affirmative. In doing so, it said:
 "In the present case, the testimony of the defendant's medical expert was critical to the defendant's case, in that it was contrary to the opinion that had been expressed by the plaintiff's expert witness, which was to the effect that the defendant had deviated from the appropriate standard of care. The plaintiff made an offer of proof outside the presence of the jury that showed that the defendant's medical expert had been a defendant in a medical malpractice action; that the witness had been represented in that action by the same law firm that now represents the defendant; and that that action had been settled. Although we are mindful of the trial court's considerable discretion in ruling on evidentiary matters of this kind, we believe that the trial court unduly and unnecessarily restricted the plaintiff's cross-examination of this witness with respect to any bias that he may have had against plaintiffs in medical malpractice actions and that, as a result, the plaintiff's case was substantially prejudiced."
595 So.2d at 864 (emphasis added).
Obviously, Clements presented elements of potential bias not presented in this case. In particular, unlike Dr. Gordon, Dr. Stewart's expert witness had been represented by the same law firm that was defending Dr. Stewart. Moreover, the posture ofClements was different from this case. In Clements, it was the plaintiff who wanted to explore the possibility that the expert witness's involvement in prior medical-malpractice actions had prejudiced the defendant's expert witness againstplaintiffs. This case presents the reverse scenario, that is, the defendant doctor invokes Clements for the proposition that he has the right to explore whether prior medical-malpractice actions against the plaintiff's expert witness have biased that expert in favor of plaintiffs. NeitherClements nor logic will support this right.
"`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ala. R. Evid. 401. Under this rule, "[e]vidence is to be admitted if it possesses `any tendency,' in logic or experience, to lead to the fact or inference for which it is offered." Advisory Committee's Notes to Rule 401. The fact that Dr. *Page 116 
Gordon has himself been a medical-malpractice defendant has notendency to prove bias in favor of plaintiffs.
Additionally, assuming — only for the sake of argument — that a malpractice defendant would, in some case, be entitled to impugn the credibility of the plaintiff's expert witness through reference to extraneous lawsuits, it could not be done in this case. This is so, because, contrary to Lightfoot's contention, Dr. Gordon's laparoscopic-cholecystectomy case is not remotely similar to the allegedly negligent conduct in this action. In Dr. Gordon's case, Dr. Gordon deliberately cut a bile duct, which he saw; here, he criticizes Dr. Lightfoot for failing to see
an injury he allegedly inadvertently caused. Thus, the evidence has no tendency to show that Dr. Gordon was applying "two unique standards of care." In short, the evidence had no probative value for any issue material to this case. The trial court exceeded its discretion, therefore, in allowing Lightfoot to cross-examine Dr. Gordon regarding medical-malpractice actions in which Dr. Gordon was a defendant.
Finally, Middleton has demonstrated that the testimony "probably injuriously affected [his] substantial rights." Dr. Gordon was Middleton's only expert witness. Therefore, Dr. Gordon's testimony as to the breach of the standard of care was crucial to Middleton's case and was not cumulative. The inadmissible testimony elicited on cross-examination was detailed and copious, spanning 15 pages of trial transcript. Obviously, the evidence tended impermissibly to prejudice the jury against Dr. Gordon.[1]
For these reasons, the trial court erred in denying Middleton's motion for a new trial. The judgment is reversed, and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
HOUSTON, J., concurs specially.
LYONS, J., concurs in the rationale in part and concurs in the result.
STUART, J., concurs in the result.
[1] Indeed, we note that Lightfoot has presented argumentsonly in support of the admissibility of evidence of Dr. Gordon's laparoscopic-cholecystectomy case. In other words, Lightfoot ignores Middleton's contention that evidence of the other medical-malpractice actions was offered solely for the purpose of prejudicing the jury against Dr. Gordon.