ADAMS, Justice.
John Reusch filed an action pursuant to the Federal Employers Liability Act (“FELA”), 45 U.S.C. § 51 et seq., against Seaboard System Railroad (“Seaboard”), alleging both negligence and failure to provide a reasonably safe place to work. The jury returned a $50,000 verdict for Reusch, and the trial court entered judgment on the verdict. Reusch filed a motion for new trial, which the trial court did not rule upon and which was deemed denied by operation of law after 90 days, pursuant to Rule 59.1, A.R.Civ.P. Reusch appeals, arguing that the verdict is inadequate and that the trial court committed reversible error on various grounds. We affirm.
Reusch was employed by Seaboard. He primarily worked as a carman, repairing railroad cars. At the time of the accident, however, Reusch had been “furloughed” from his job as a carman and was working as a trackman, repairing railroad track, moving track ties, and spreading ballast.
On December 26, 1984, Reusch reported to work in Loyall, Kentucky, and his foreman instructed him to board a bus owned by Seaboard for transportation to Glidden, Kentucky. The bus was a modified school bus with seats on either side of an aisle. When he arrived at Glidden, Reusch left his lunch and rain gear on the bus. At lunchtime, Reusch boarded the bus to retrieve his lunch and rain gear. He tripped over some tools that were in the aisle and fell to the floor, landing on his right side. After the fall, Reusch had a pain in his back.
Seaboard immediately sent Reusch to Dr. Smith Howard in Harlan, Kentucky; Dr. Howard treated Reusch and then released him. He returned to work that day and for the next two days, but Seaboard did not require him to work. After the New Year’s holiday, Reusch was informed that he no longer had the trackman’s job; Reusch had been aware, however, that that particular job was temporary.
Reusch was later examined by Dr. George Schoedinger III. Dr. Schoedinger treated Reusch for pain in his back and in his right leg. Reusch continued to complain of pain, and Dr. Schoedinger performed a chemonucleolysis on Reusch. Reusch, nevertheless, complained of back pain and of pain in both of his legs. Dr. Schoedinger performed surgery on Reusch, which according to Reusch, did not alleviate the pain. Dr. Walter Whitehurst, testifying for Seaboard, criticized Dr. Schoe-dinger’s use of chemonucleolysis on Reusch.
Medical evidence presented at trial showed that all of Reusch’s objective medical tests were negative with regard to his alleged injury. No nerve root impingement was found. Dr. Schoedinger’s surgical notes do indicate that the fragments left over from the disc he treated by a chemeo-papain injection were indicative of a back problem.
Reusch makes two arguments that were not preserved for appellate review. Reusch filed a motion in limine, requesting that evidence of his receipt of public aid, his personal life, and his medical history prior to the accident not be presented to the jury. The record does not reflect the trial court’s ruling on that motion. Seaboard read Reusch’s deposition into the trial record in front of the jury. The deposition contained Reusch’s testimony concerning his receipt of food stamps, his living arrangements with his girlfriend, who was helping pay his bills, and his prior medical *491 history. Reusch argues that the trial court erred in admitting that testimony. He never objected to the introduction of that testimony, however, and accordingly, because there had been no ruling on the motion in limine either, the record contains no ruling by the trial court concerning the admissibility of the testimony that Reusch now challenges. Reusch’s argument fails, because no adverse rulings are presented for review. Beautilite Co. v. Anthony, 554 So.2d 946, 949 (Ala.1989).
Reusch also argues that Seaboard’s counsel improperly mentioned venue in closing arguments. Although Reusch objected to the comment, he did not obtain a ruling from the trial judge. Again, no adverse ruling is presented for review. Beautilite Co., at 949.
Reusch contends that the trial court erred in giving two particular jury charges. In the first challenged jury charge, the trial court stated:
“Now you cannot award damages to the plaintiff in this case for any future lost earnings or loss of earning capacity.”
Even when an FELA action is brought in a state court, “questions concerning the measure of damages in an FELA action are federal in character.” Norfolk & Western Ry. v. Liepelt, 444 U.S. 490, 493, 100 S.Ct. 755, 757, 62 L.Ed.2d 689 (1980). Accordingly, we look to federal cases for guidance in FELA actions. The United States Supreme Court has set out guidelines for the calculation of damages for impaired earning capacity in FELA cases. The damages award must be based on the plaintiffs after-tax earnings. Norfolk & Western Ry., at 493-94, 100 S.Ct. at 757-58.
In Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), the Supreme Court addressed the method to be used to calculate a damages award for lost future earnings. Pfeifer was injured in the course of his employment as a loading helper on a coal barge, and he brought an action pursuant to § 5(b) of the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. 905. The Court declined to adopt any specific mathematical formula as a method for calculating lost future earnings. The Court, however, did set forth general considerations for calculating and proving lost earnings:
“[T]he first stage in calculating an appropriate award for lost earnings involves an estimate of what the lost stream of income would have been. The stream may be approximated as a series of after-tax payments, one in each year of the worker’s expected remaining career.”
462 U.S. at 536, 103 S.Ct. at 2550.
The next step in calculating the damages award is to discount the lost stream of income calculated above to present value:
“The discount rate should be based on the rate of interest that would be earned on ‘the best and safest investments.’ ... [Sjince under Norfolk & Western R. Co. v. Liepelt [citation omitted] the lost stream of income should be estimated in after-tax terms, the discount rate should also represent the after-tax rate of return to the injured worker. Thus, although the notion of a damages award representing the value of a lost stream of earnings ... rests on some fairly sophisticated economic concepts, the two elements that determine its calculation can be stated fairly easily. They are (1) the amount that the employee would have earned during each year that he could have been expected to work after the injury; and (2) the appropriate discount rate, reflecting the safest available investment.
“... The trier of fact should apply the discount rate to each of the estimated installments in the lost stream of income, and then add up the discounted installments to determine the total award.”
462 U.S. at 537-38, 103 S.Ct. at 2550-51.
In Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir.1983), the former Fifth Circuit Court of Appeals rendered an opinion, specifically addressing Pfeifer, that is binding on both the Fifth and Eleventh Circuits. Culver, at 123. Culver stated that the calculation of lost future earnings “involves four steps: estimating the loss of work life resulting from the injury ..., calculating the lost income stream, comput *492 ing the total damage[s], and discounting that amount to its present value.” 722 F.2d at 117. The Court then went further than the United States Supreme Court and held that “fact-finders in this Circuit must adjust damage[s] awards to account for inflation according to the below-market discount rate method.” 722 F.2d at 122.
We have implicitly held that when a plaintiff meets the requirements of these federal cases, he is entitled to have his claim for loss of future earnings submitted to the jury. In Illinois Central Gulf R.R. v. Russell, 551 So.2d 960 (Ala.1989), an FELA case, the defendant railroad argued that the trial court had erred when it submitted the plaintiffs claim for loss of earning capacity to the jury. Affirming the trial court's judgment, this Court stated:
“Russell called an economist as an expert witness. He stated that Russell’s net loss of income from February 1985 to January 1987 was $50,397, after taxes and expenses. In calculating the amount of money that Russell will earn in the future (working full-time) he considered the amount of his annualized gross wages; his work life [expectancy] based on U.S. Department of Labor tables (18.3 years); a 2% real wage gain (the amount of wages exceeding inflation, using the consumer price index); and income taxes paid on future wages.”
551 So.2d at 963. Accordingly, we held that Russell had presented evidence as required by federal case law to sustain his claim.
Reusch offered evidence that he earned an average annual salary of $24,400 in the five years he had worked for the railroad preceding the accident. He testified that in 1984, the year of the accident, he had earned $30,000. He offered no other evidence in support of his claim for lost earnings. He offered no evidence of the economic value of his future employment, so there was no conclusive evidence of any lost stream of earnings. He did not offer any testimony or other evidence of the amount of income tax he was paying or the effect of taxation on any stream of earnings he might have had. Although Reusch did offer mortality tables, he did not offer evidence of his work life expectancy. Furthermore, Reusch did not offer evidence of the interest rate on the best and safest investments as well as an application of a discount rate to his alleged stream of earnings. Finally, Reusch offered no evidence of the effect of inflation on any stream of earnings he may have had. At most, Reusch produced only a portion of the evidence necessary to ascertain his stream of earnings. Under the applicable federal decisions, we must conclude that he did not produce the evidence necessary to sustain his claim for loss of future earnings. The trial court did not err by instructing the jury that it could not award Reusch damages for lost future earnings and loss of earning capacity.
Reusch further argues that the trial court erred when it gave the jury this charge:
“And if you made an award for any past lost wages to the plaintiff, you should reduce that by the State or Federal taxes which the plaintiff is required to pay.”
An award of damages in an FELA case is not subject to state or federal income tax. Norfolk & Western Ry., supra; Seaboard Coast Line R.R. v. Yow, 384 So.2d 13 (Ala.1980). Accordingly, if, to prove his claim for lost past wages, Reusch had produced evidence of his before-tax income, then the charge arguably would not be error, because it would indicate that Reusch was to be compensated for loss of his after-tax earnings. On the other hand, if, to prove his claims for lost wages, Reusch had produced evidence of his after-tax income, then the charge might be error, because it might lead the jury to reduce the award, based on after-tax earnings, once again for taxes. The record does not indicate whether the figures that Reusch used to support his lost past wages claim are before-tax or after-tax figures. Without that evidence, we will not hold that the trial court erred.
Finally, Reusch contends that the jury verdict was inadequate and was contrary to the great weight and preponderance of the evidence. As the Court stated *493 in Brumley v. United American Insurance Co., 542 So.2d 1231 (Ala.1989):
“Factual disputes are to be resolved by the trier of fact.... A jury’s verdict is presumed correct and will not be disturbed unless plainly erroneous or manifestly unjust. This presumption of correctness is further strengthened when a motion for new trial is denied by the judge. Pate v. Sunset Funeral Home, 465 So.2d 347 (Ala.1984).”
542 So.2d at 1233.
We have reviewed the record, and we do not find that the jury’s verdict was either inadequate or against the weight and preponderance of the evidence. Reusch did present evidence that would have supported a larger verdict. However, the jury was also entitled to infer from all the evidence that Reusch failed to mitigate his damages and that he was not injured as severely as he claimed and to doubt his credibility as a witness.
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.